UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUTRIDE SAFIER LLP,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL REESE, *et al.*,<br><br>    Defendants.<br>_____/ | No. C-13-1062 EMC<br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO DISMISS AMENDED COUNTERCLAIMS**<br><br>**(Docket No. 28)** |

       Gutride Safier LLP, a law firm, initiated this lawsuit against one of its former partners, Michael Reese, as well as the law firm where Mr. Reese currently practices, Reese Richman LLP (collectively, "Reese parties"). In essence, Gutride Safier alleges that the Reese parties have failed to comply with the terms of an agreement which governs the withdrawal of Mr. Reese from Gutride Safier. The Reese parties have filed an answer to Gutride Safier's complaint, and Mr. Reese has asserted counterclaims against Gutride Safier and its two partners, Adam Gutride and Seth Safier (collectively, "Gutride Safier parties"). Currently pending before the Court is the Gutride Safier parties' motion to dismiss the counterclaims.[1]

       Having considered the parties' briefs, as well as the oral argument of counsel, the Court hereby **GRANTS** the motion to dismiss.

---

[1] The Court has already disposed of Gutride Safier's motion to strike the affirmative defenses asserted in the answer.

# I. FACTUAL & PROCEDURAL HISTORY

A. Facts

In his counterclaims, Mr. Reese alleges as follows. Gutride Safier is a law firm that practices throughout the United States, including New York. *See* FACC ¶ 77. In June 2006, Mr. Reese joined the firm as a partner pursuant to a written contract. *See* FACC ¶¶ 78-79. That written contract was an addendum to the Gutride Safier Partnership Agreement of November 1, 2005. *See* FACC ¶ 79 & Ex. A (addendum). The addendum was negotiated in New York. *See* FACC ¶ 79. Under the addendum, Mr. Reese was to receive an equal share with all other partners in the firm's net recovery from all cases litigated by the firm (with certain limited exceptions). *See* FACC, Ex. A (compensation). According to Mr. Reese, the addendum "allowed Gutride Safier LLP to maintain a legal practice in New York, New York; file cases in New York; and triple its size by adding a number of New York lawyers to its practice." FACC ¶¶ 79.

In April 2007, Mr. Reese became a named partner of the Gutride Safier law firm. *See* FACC ¶ 82.

In February 2008, Gutride Safier received payments with respect to two cases that had settled – *Flash Memory* and *Wells Fargo* – and on which Mr. Reese had worked. *See* FACC ¶ 83. Under the partnership agreement/addendum, Mr. Reese should have been given a share of the payments under the addendum. Mr. Gutride and Mr. Safier invited Mr. Reese to California under the pretense that they would be celebrating the recent settlements. In fact, that meeting was designed to force Mr. Reese out of the law firm and to breach the addendum (*i.e.*, to give Mr. Gutride and Mr. Safier more than their shares). *See* FACC ¶¶ 83-84. Mr. Gutride and Mr. Safier told Mr. Reese that they would not pay him what was owed under the partnership agreement/addendum and "threatened him with bankruptcy if he did not leave the Firm, as they would not pay him any of the money due to him under the [addendum]." FACC ¶ 84.

The Gutride Safier parties successfully forced Mr. Reese out of the law firm – *i.e.*, through the execution of the Withdrawal Agreement presented to him at the California meeting. Under the

Withdrawal Agreement,[2] Mr. Reese was paid $318,808.72 to compensate him "for all amounts allegedly owed by the Partnership to Reese, including without limitation for his work on or expenses incurred in *Siemers v. Wells Fargo*; . . . income earned by the Partnership before, during or after his tenure as a Partner; [and] expenses he incurred on behalf of, because of, or while affiliated with the Partnership." Compl., Ex. A (Withdrawal Agreement ¶ I). The parties also agreed that certain cases would be assigned to Gutride Safier and certain cases would be assigned to Mr. Reese and/or his new law firm. *See* Compl., Ex. A (Withdrawal Agreement ¶ II(A)-(B)). With respect to the Gutride Safier cases, Mr. Reese agreed to assign to Gutride Safer "the right to recover attorneys' fees and expenses for any work he performed or expenses he incurred (including his future work or expenses)." Compl., Ex. A (Withdrawal Agreement ¶ II(A)). Mr. Reese also agreed not to interfere with any of the Gutride Safier cases. *See* Compl., Ex. A (Withdrawal Agreement ¶ II(E)).

The Reese parties claim that the Withdrawal Agreement was a product of duress or coercion and therefore invalid. Thus, when Gutride Safier earned payments in, *e.g.*, January and June 2010 for other cases on which Mr. Reese had worked, Mr. Reese contends he was deprived of payments that he otherwise would have been owed under the partnership agreement/addendum. *See* FACC ¶¶ 86-87. According to Mr. Reese, as of March 8, 2013, he would have been paid more than $750,000 under the terms of the partnership agreement/addendum. *See* FACC ¶ 88.

B. <u>Litigation</u>

Gutride has sued Reese for breach of the Withdrawal Agreement. In response, Mr. Reese contends the Withdrawal Agreement is invalid, and based on the above allegations, he has asserted counterclaims for breach of contract and a separate claim for civil conspiracy. *See* FACC ¶ 100 (asserting that the Gutride Safier parties breached "by forcing Reese out of the Firm and paying Reese a lessor amount than was due him pursuant to the terms of the [partnership agreement/addendum"); FACC ¶ 102 (alleging that the Gutride Safier parties "conspired together to

---

[2] Although Mr. Reese does not make any specific factual allegations in his counterclaims about the terms of the Withdrawal Agreement, he does not dispute that he signed the agreement and that the Gutride Safier parties have submitted to the Court a true and correct copy of the agreement. The Court therefore looks to that agreement in discussing its terms.

improperly force Reese from the [law] [f]irm and force him to take less than was due under the Contract").

In addition to the above, Mr. Reese has asserted a claim for tortious interference with a business relationship. For this cause of action, the relevant allegations are as follows. Under the Withdrawal Agreement, Mr. Reese was forced to assign away his rights to *In re Ticketmaster Litigation*, No. C-07-1459 DSF (JTLx) (C.D. Cal.), a matter that he had initiated and for which his father, Robert Reese, was the original named plaintiff. *See* FACC ¶ 89. Nevertheless, under the Withdrawal Agreement, Mr. Reese still had the right to represent the personal interests of his father. *See* FACC ¶ 90. When Gutride Safier settled the *Ticketmaster* litigation, one of the provisions in the settlement agreement was for each named plaintiff "to sign off on all aspects of the settlement in order to receive an incentive award of $5,000.00." FACC ¶ 93. Gutride Safier solicited Robert Reese's signature as a named plaintiff. The firm told Robert Reese that he had to provide a signature by February 4, 2013, in order to obtain the incentive award. *See* FACC ¶ 94. When Robert Reese did not sign the settlement agreement by that date, Gutride Safier initiated the instant case against the Reese parties, essentially "in retaliation for representing the interests of Robert Reese in the *Ticketmaster Litigation*." FACC ¶ 95. According to the Reese parties, one of the issues that Robert Reese has with respect to the proposed settlement is that Gutride Safier has or had a fee-splitting agreement with another law firm and that fee-splitting agreement has never been disclosed to the presiding judge in the *Ticketmaster* case. *See* FACC ¶¶ 96-97. Mr. Reese claims tortious interference because his ability to represent his father "has been severely compromised and negatively impacted due to the fact that [the Gutride Safier parties] filed [the instant action] against [him] because his [father] had not signed [the] settlement agreement [in *Ticketmaster*] by an arbitrary date set by the [Gutride Safier parties]." FACC ¶ 104.

## II. DISCUSSION

A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks*

4

*Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Iqbal*, 129 S. Ct. at 1949.

In the instant case, the Gutride Safier parties have moved for a dismissal of each of the counterclaims asserted by Mr. Reese – *i.e.*, breach of contract, civil conspiracy, and tortious interference with business relationship.

B.   Civil Conspiracy

In his claim for civil conspiracy, Mr. Reese alleges that Mr. Gutride and Mr. Safier "conspired together to improperly force [Mr.] Reese from [the Gutride Safier law firm] and force him to take less than was due under the Contract." FACC ¶ 102. Although the Gutride Safier parties have characterized the civil conspiracy claim as a fraud claim, the allegations related to the claim do not support that characterization. For example, there is no allegation that the Gutride Safier parties made any fraudulent misrepresentation to Mr. Reese. Therefore, the civil conspiracy claim is simply a claim for conspiracy to breach a contract.

The problem for Mr. Reese is that under both California and New York law, one cannot conspire to breach a contract to which he or she is a party. *See JRS Prods., Inc. v. Matsushita Elec. Corp. of Am.*, 115 Cal. App. 4th 168, 181 (2004) (explaining that, in *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503 (1994), the California Supreme Court essentially "rejected the notion that a party to a contract could tortiously conspire with another to breach the contract"); *Sharma v. Skaarup Ship Mgmt. Corp.*, 699 F. Supp. 440, 445 (S.D.N.Y. 1988) (stating that, "under

New York law[,] a party to a contract is not liable to another contracting party for conspiracy to breach the contract"). Accordingly, the Court dismisses the claim for civil conspiracy with prejudice.

C. <u>Breach of Contract</u>

In his counterclaim for breach of contract, Mr. Reese alleges that the Gutride Safier parties breached the partnership agreement and its addendum by "forcing [him] out of the Firm and paying [him] a lessor amount than was due him pursuant to the terms of the Contract." FACC ¶ 100. More specifically, Mr. Reese claims that he was not fully paid his share under the contract for two cases that settled in February 2008 (*Flash Memory* and *Wells Fargo*) and then again for cases that settled in January 2010 and June 2010.

The Gutride Safier parties have moved for dismissal of the breach of contract counterclaim on the ground that it is time barred. While a statute-of-limitations assertion is an affirmative defense, a defendant may still raise a motion to dismiss based on the defense if the running of the limitations period is apparent on the face of the complaint. *See Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) (stating that, "[i]f the running of the statute is apparent on the face of the complaint, the defense may be raised by a motion to dismiss").

The Gutride Safier parties contend that, based on the face of the counterclaim, the alleged breach took place at the latest by February 2008. They further argue that, because the statute of limitations for a breach-of-contract claim is four years under California law, *see* Cal. Code Civ. Proc. § 337 (providing as follows: "Within four years: 1. An action upon any contract, obligation or liability founded upon an instrument in writing"), Mr. Reese's claim is clearly time barred as he did not file his counterclaim until March 2013. In response, Mr. Reese argues that New York law is applicable, not California law, and, because New York has a six-year limitations period for a claim for breach of contract, *see* N.Y. C.L.S. C.P.L.R § 213 (providing as follows: "Actions to be commenced within six years: . . . on contract"), there is no time bar. Mr. Reese also argues that, even if California law were applicable, that would preclude his counterclaim only to the extent it was based on a breach in February 2008; however, he has also asserted a breach based on a failure to

1 pay with respect to cases settled in January 2010 and June 2010 – both of which fall within
2 California's four-year limitations period.

### 1. Choice of Law

The Court addresses first the choice-of-law issue, *i.e.*, whether California or New York law governs Mr. Reese's claim for breach of contract. Because the partnership agreement and addendum did not include any choice-of-law provision, this Court – sitting in diversity – applies California's choice-of-law rules in deciding what law applies to the contract. *See Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1002 (9th Cir. 2010) (stating that "[a] federal court sitting in diversity applies the forum state's choice of law rules").

The parties agree that the relevant California choice-of-law rule in the instant case is California Civil Code § 1646. *See* Mot. at 4; Opp'n at 4. Section 1646 states as follows: "A contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Cal. Civ. Code § 1646. "[A] contract 'indicate[s]' a place of performance within the meaning of section 1646 if the intended place of performance can be gleaned from the nature of the contract and its surrounding circumstances."[3] *Frontier*, 153 Cal. App. 4th at 1450-51.

In the instant case, it does not appear that the partnership agreement or addendum identifies a specific place of performance. Therefore, the Court must determine whether a place of performance can be gleaned from the nature of the partnership agreement/addendum and its surrounding circumstances. Unfortunately, these considerations are of little help. Gutride Safier is a California-based law firm, but it appears that Mr. Reese was brought into the firm in order to establish a New York presence. Furthermore, there does not appear to be any real dispute that Gutride Safier has a nationwide practice. *See, e.g.*, FACC ¶ 77 (alleging that Gutride Safier is a law firm that practices

---

[3] On its face, § 1646 might suggest that it is applicable only where there is an issue regarding the interpretation of a contract – *i.e.*, the statute might not apply where a court decides which state's statute of limitations should govern. However, in *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436 (2007), a state appellate court explicitly noted that "opinions have cited section 1646 to support conclusions on choice-of-law issues other than the law governing the interpretation of a contract," including the statute of limitations. *Id.* at 1453-54 (albeit noting that these cases had not "explain[ed] why a statute that by its express terms establishes a choice-of-law rule only as to the interpretation of a contract should determine other choice-of-law issues").

throughout the United States, including New York). Because the law of multiple states cannot simultaneously govern, the Court must turn to the provision in § 1646 that asks the place where the contract was "made."[4]

The Ninth Circuit has stated that a contract is "made" for purposes of § 1646 in the place where it is accepted. *See Arno v. Club Med*, 22 F.3d 1464, 1472 n.6 (9th Cir. 1994). Here, the Gutride Safier parties have offered evidence that the contract was accepted in San Francisco.[5] *See* Supp. Safier Decl. ¶ 6. However, at this point, the Court cannot consider this evidence because pending before it is a 12(b)(6) motion only and not, *e.g.*, a motion for summary judgment. Accordingly, because § 1646 does not provide any clarity as to choice of law based on the cognizable pleadings herein, the Court must evaluate the choice of law issue under California's governmental interest test. *See Kane v. Delong*, No. C-12-5437 EMC, 2013 WL 1149801, at *8 (N.D. Cal. Mar. 19, 2013) (stating that, "[w]here two states' laws could arguably apply to a contract that does not contain a choice of law provision, California courts follow a 'governmental interests' approach to choice of law"); *see also Ledesma v. Jack Stewart Produce, Inc.*, 816 F.2d 482, 484 n.2 (9th Cir. 1987) (indicating that the governmental interest analysis should be applied even where the conflict in laws was with respect to the states' statutes of limitation); *American Bank of Commerce v. Corondoni*, 169 Cal. App. 3d 368, 372 (1985).

Under the governmental interest test, a court first determines whether there is a material difference between the state laws at issue and whether each jurisdiction has an interest in having its own law applied. *See Kane,* 2013 WL 1149801, at *8; *Frontier*, 153 Cal. App. 4th at 1454. If so, there is a "true conflict" and the court performs a comparative impairment analysis to determine which state's law should apply. *See Kane*, 2013 WL 1149801, at *8 (stating that the court should "select the law of the state whose interests would be more impaired if its law were not applied")

---

[4] The above facts also make problematic any assessment of what state has the most significant relationship to the contract. *See American-Re-Ins.*, 527 F. Supp. 444, 451 (C.D. Cal. 1981) (stating that, "[w]hen application of § 1646 is unclear, California courts have considered the factors set forth in the Restatement, which provides that, in the absence of choice by the parties to the agreement, the relationship of the parties is governed by the law of the state having the most significant relationship to the transaction").

[5] Mr. Reese has not offered any evidence on this matter.

(internal quotation marks omitted); *Frontier*, 153 Cal. App. 4th at 1454-55 (stating the same). "If only one jurisdiction has a legitimate interest in the application of its rule of decision, there is a false conflict and the law of the interested jurisdiction is applied." *Abogados v. AT&T, Inc.*, 223 f.3d 932, 934 (9th Cir. 2000) (internal quotation marks omitted).

Here, there is a material difference between the states' respective laws – California law provides for a four-year statute of limitations and New York law provides for a six-year statute of limitations. However, contrary to what Mr. Reese contends, it is not clear that each state has an interest in having its own law apply – *i.e.*, arguably, there is a false conflict and not a true conflict within the meaning of choice-of-law analysis.

In this regard, the Court takes note that

> [a] "false" conflict between two statutes of limitation occurred in *Ashland Chemical Co. v. Provence* (1982) 129 Cal. App. 3d 790. There, the parties disagreed over whether California's or Kentucky's statute applied to a guaranty contract. The court noted that the purpose of such statutes is to protect the enacting state's residents and courts from the assertion of stale claims. It concluded that this policy would not be advanced if it were to enforce Kentucky's longer limitations period: "Here California courts and a California resident would be protected by applying California's statute of limitations *because California is the forum and the defendant is a California resident*. Applying California's statute of limitations would thus advance its underlying policy . . . . In contrast, Kentucky has no interest in having its statute of limitations applied because here there are no Kentucky defendants and Kentucky is not the forum." The court then applied California's statute.

*American Bank*, 169 Cal. App. 3d at 372-73 (discussing *Ashland*; emphasis added). In *Nelson v. International Paint Co.*, 716 F.2d 640, 645 (9th Cir. 1983), the Ninth Circuit performed an analysis similar to that in *Ashland*. *See id.* at 645 (stating that "[t]he present case parallels *Ashland*, since the forum is in California, and the only defendant is a California resident[;] [o]nly California has an interest in having its statute of limitations applied" and so "the conflict between California and Alaska or Texas law is false, and the district court correctly applied California law to dismiss the action"). The instant case is analogous to both *Ashland* and *Nelson* in that, here, the forum is California and the Gutride Safier parties (the counterdefendants) are all California residents.

At the hearing, however, Mr. Reese cited to *Aalmuhammed v. Lee*, 202 F.3d 1227 (9th Cir. 2000), in support of his position that New York does in fact have an interest – and one which overrides California's. The Court is not persuaded.

As a preliminary matter, the Court takes note that Mr. Reese did not in his opposition brief, address the governmental interest test whatsoever – even though the test had clearly been implicated in the Gutride Safier parties' motion to dismiss. Nor did he otherwise cite to *Aalmuhammed* in his opposition. Accordingly, it would not be unfair for the Court to deem any argument with respect to the governmental interest test waived. *See also Frontier*, 153 Cal. App. 4th at 1465 (stating that "[t]he party arguing that foreign law governs has the burden to identify the applicable foreign law, show that it materially differs from California law, and show that the foreign law furthers an interest of the foreign state").

Furthermore, even if the Court were to consider *Aalmuhammed*, Mr. Reese would fare no better. In *Aalmuhammed*, the plaintiff filed suit in California, asserting, *inter alia*, a claim for quantum meruit on the basis that the defendants had accepted his services, knowing that they were not being provided gratuitously, but failed to pay him the fair value of his services or even his expenses. All of the plaintiff's services were performed in New York and Egypt – *i.e.*, no services were performed in California at all. With respect to choice of law, the defendants argued that

> only California had an interest in the application of its statute of limitations, not New York. Their theory is that the defendant corporations have their principal places of business in California, [the plaintiff] resided in neither state (he lives in Florida, though he spent the months of shooting time in New York and Egypt), and [the plaintiff] filed his lawsuit in California.

*Id.* at 1236.

The Ninth Circuit rejected the defense argument, noting that the strength of each state's interest was a factor to consider:

> California's interest in protecting its residents from stale claims arising from work done outside the state is a weak one . . . New York's interest in governing the remedies available to parties working in New York is far more significant. New York's connection with [the plaintiff's] claim [was] considerably more substantial, immediate and concrete than California's.

10

*Aalmuhammed v. Lee*, 202 F.3d at 1236.

While *Aalmuhammed* does suggest that New York plausibly has some interest in having its law applied in the case at bar and that defendants' residence or principal place of business alone is not dispositive, *Aalmuhammed* does not automatically establish that that interest should override California's interest in protecting its resident counterdefendants from stale claims. *Aalmuhammed* is materially distinguishable from the instant case because, here, Mr. Reese does not make any allegation in his counterclaims that he exclusively performed services in New York. While he does suggest that he was added to the partnership so that the Gutride Safier law firm could have in effect a New York office, *see, e.g.*, FACC ¶ 79, that does not mean that his work was performed exclusively in New York. Furthermore, even if his work was, as a formal matter, performed primarily in New York, that does not mean that he worked solely on New York cases, as, by his own admission, Gutride Safier is a firm with a nationwide practice, *see* FACC ¶ 74, and he worked on at least the *Flash Memory* and *Wells Fargo* cases, both of which appear to be California cases. *Cf. Gurvey v. Legend Films, Inc.*, No. 09-CV-942-IED (JMA), 2010 U.S. Dist. LEXIS 444, at *45 (S.D. cal. Jan. 4, 2010) (noting that "California's connection with [plaintiff's] claims is more substantial than in *Aalmuhammed* because [plaintiff's] work concerned both California and New York, whereas in *Aalmuhammed* there was no work at all performed in California"; adding that, although "a lot of her work [was] performed in New York[,] [it] concerned the application of California law"). Finally, it should be noted that the main breach at issue in the instant case took place in California, *i.e.*, when Mr. Gutride and Mr. Safier held the "special" meeting in February 2008 and repudiated the partnership agreement/addendum with Mr. Reese. Thus, in addition to protecting its residents from stale claims, California has a further interest in having its law applied, because the alleged wrongdoing took place within this forum. Taking into account all of these facts, the Court concludes that, while New York may have some interest in having its law applied, California's interests would be more substantially impaired if its own law were not applied.

Because California law applies, the Gutride Safier parties' failure to pay Mr. Reese for the settlement of *Flash Memory* and *Wells Fargo* in February 2008 is time barred. *See also Frontier*,

153 Cal. App. 4th at 1465 (stating that it is the foreign law proponent's burden to prove that foreign law should be applied).

### 2. January and June 2010

As noted above, Mr. Reese contends that, even if the February 2008 breaches are time barred, new breaches occurred in January and June 2010, and these are not time barred even under California law as he filed suit within four years of their occurrence.

Mr. Reese's argument here is predicated on *Romano v. Rockwell International, Inc.*, 14 Cal. 4th 479 (1996). There, the California Supreme Court stated that,

> [i]n the event the promisor repudiates the contract before the time for his or her performance has arrived, the plaintiff has an election of remedies – he or she may "treat the repudiation as an anticipatory breach and immediately seek damages for breach of contract, thereby terminating the contractual relation between the parties, or he [or she] can treat the repudiation as an empty threat, wait until the time for performance arrives and exercise his [or her] remedies for actual breach if a breach does in fact occur at such time."
> . . . [I]n the event the plaintiff disregards the repudiation, the statute of limitations does not begin to run until the time set by the contract for performance.

*Id.* at 489. According to Mr. Reese, when the Gutride Safier parties repudiated the partnership agreement/addendum in February 2008 (at the meeting in California), this was an anticipatory breach, and he was entitled to wait to see if they would actually fail to perform at the time of performance before the limitations period would start to run.

Mr. Reese's reliance on *Romano* is unavailing. In *Fox v. Dehn*, 42 Cal. App. 3d 165 (1974), a state appellate court explained that

> [a]n essential element of an anticipatory breach is that repudiation by the promisor occur *before* his performance was due. However, where there is a partial breach of the contract followed by a repudiation of the contract by the promisor, although the breach is total, it is not characterized as an anticipatory breach as to which an election would lie.

*Id.* at 171 (emphasis added). The court also indicated that, where a partial breach and repudiation take place at the same time, there cannot be an anticipatory breach as to which an election would lie. *See id.* at 172 (stating that "[a]s performance was required by decedent when he refused to comply with his duties under the oral agreement, the breach cannot be characterized as anticipatory"); *cf.*

12

1  *Gold Mining & Water Co. v. Swinerton*, 23 Cal. 2d 19, 27 (1943) (noting that "where there has been
2  a partial breach by the promisor accompanied or followed by a repudiation of the contract by the
3  promisor, the breach is total").

4      The *Fox* rule makes sense. Where there are ongoing contractual obligations, an announced
5  repudiation unaccompanied by an actual breach does not necessarily mean that the putative
6  breaching party has irrevocably repudiated the contract. Therefore, it is reasonable to allow the
7  nonbreaching party a chance to elect defer bringing suit and wait and see if the breaching party
8  continues to perform under the contract. To start the litigation period running where no actual
9  breach has occurred would force the nonbreaching party prematurely to bring suit when it is possible
10 that no breach will occur. On the other hand, if there is a total or partial breach accompanied by a
11 repudiation of the contract, there is no good reason to allow for the election to defer a suit, since
12 there would be no reason for the nonbreaching party to believe that the breaching party might still
13 perform.

14     Not only does the *Fox* rule make sense, but it is also entirely consistent with *Romano*. In
15 *Romano*, the California Supreme Court noted that, where there is a repudiation of the contract before
16 the time for performance, the nonbreaching party can disregard the repudiation and the statute of
17 limitations does not begin to run until the time for contract performance because "[t]he plaintiff
18 should not be penalized for leaving to the defendant an opportunity *to retract* his wrongful
19 repudiation." *Romano*, 14 Cal. 4th at 497-98 (emphasis added). But, in the *Fox* circumstances,
20 there would be no point in giving the defendant the opportunity to retract as the rejection of the
21 contract would already have been cemented by the repudiation combined with the actual breach.

22     Although Mr. Reese has tried to mold the facts of this case to fit *Romano*, the allegations in
23 the counterclaims establish that this case falls under the *Fox* rule. More specifically, in the case at
24 bar, the allegations in the counterclaims indicate that, at the time that the Gutride Safier parties
25 repudiated the partnership agreement/addendum in February 2008, Mr. Reese was already owed
26 money for the settlement of the *Flash Memory* and *Wells Fargo* cases. *See* FACC ¶ 84 (alleging
27 that, in February 2008, "Gutride and Safier presented Reese with the posterboard chart that told
28 Reese that they would not pay Reese the amount of money that *was* due him under the Contract, but

1  instead told him that they were forcing him out of the [law] firm") (emphasis added). Because there
2  was a partial breach (*i.e.*, failure to pay with respect to the *Flash Memory* and *Wells Fargo*
3  settlements) followed or accompanied by a repudiation, there was more than a bare anticipatory
4  breach; accordingly, under *Fox*, there was no right to maintain the ability to elect. It was clear by
5  February 2008 that the partnership agreement/addendum was being rejected. Mr. Reese had to file
6  suit within four years thereafter.[6]

   This is so even though there is the possibility of future damages (*i.e.*, based on settlements of
8  cases after February 2008). To the extent Mr. Reese suggests that he could not sue in February 2008
9  for future damages because "the amount of money due to [him] was unknown," Docket No. 47
10 (Supp. Br. at 1) – and thus he should have been allowed to wait before having to sue – that argument
11 is meritless. It is often the case that future damages cannot be determined with certainty; yet that
12 uncertainty does not toll the limitations period. *See, e.g.*, *Marketing West, Inc. v. Sanyo Fisher*
13 *(USA) Corp.*, 6 Cal. App. 4th 603, 614 (1992) (stating that "neither uncertainty as to the amount of
14 damages nor difficulty in proving damages tolls the period of limitations"). Furthermore, Mr. Reese
15 does not explain why he could not have sued, at the very least, for a declaration as to his rights.

   Finally, it is worth noting that, even if the case at bar could be deemed an anticipatory breach
17 case, Mr. Reese's claim would still fail on an independent ground.

   In *Romano*, the California Supreme Court indicated that, where there has been anticipatory
19 breach, the running of the statute of limitations is tolled where the nonbreaching party elects to treat
20 the contract as still in effect and does not abandon it. *See Romano*, 14 Cal. 4th at 489-90. One
21 means of establishing such would be for the nonbreaching party to continue performance under the
22 contract. *See id.* at 490 (where there was an anticipatory breach because the defendant expressed an
23 intent to terminate the plaintiff's employment on a particular date in the future, noting that the

---

[6] Even if the repudiation in February 2008 *preceded* the partial breach (*i.e.*, the failure to pay for the February 2008 settlements) by a short period of time, this still would not be enough to save Mr. Reese's claim from the time bar. Neither *Romano* nor *Fox* explicitly addresses what should happen when there is a repudiation prior to the time for performance followed by a partial breach. Given the underlying reasoning in the cases, however, the Court concludes that the partial breach would also trigger the running of the statute of limitations because, again, at that point, it would be clear that the breaching party did not intend to perform the contract.

1  plaintiff "continued to perform and accept compensation until the time of actual termination,
2  reflecting an election to treat the contract as still in effect").

3        Here, Mr. Reese has not alleged any facts to show that he elected to treat the partnership
4  agreement/addendum as still in effect. Indeed, the Court notes that Mr. Reese has never disputed
5  that he signed the Withdrawal Agreement and accepted the cash pay-out under the Withdrawal
6  Agreement (more than $300,000), which effectively establishes that he abandoned the partnership
7  agreement/addendum. In this regard, the instant case is analogous to *Marketing West, Inc.*, 6 Cal.
8  App. 4th at 603, where a state appellate court found that the statute of limitations began to run at the
9  time of the defendant's threat to terminate employment without good cause because, at the time of
10 the threat, the defendant repudiated the oral contract providing that employment could be terminated
11 only upon good cause and employees accepted that repudiation and entered into superseding written
12 contracts. *See Romano*, 14 Cal. 4th at 490-91 (discussing *Marketing West*). Although Mr. Reese
13 now maintains that he was, in essence, coerced into signing the Withdrawal Agreement, that does
14 not immunize his claim for breach of the partnership agreement/addendum from being time-barred.

15       Finally, the Court notes that Mr. Reese's position is especially problematic because there
16 does not appear to be any express termination date for the partnership agreement/addendum. Under
17 Mr. Reese's construct, he could have elected not to sue on the January/June 2010 settlements and
18 wait even years into the future. Because money would continually be owed under the original
19 partnership agreement indefinitely, there effectively would be no statute of limitations. This cannot
20 be what *Romano* contemplated, especially where the events at the core of Mr. Reese's claim – the
21 coerced Withdrawal Agreement – all occurred in 2008. The purpose of statutes of repose is to
22 prevent relevant evidence and memories from going stale. *See Boon Rawd Trading Int'l Co., Ltd. v.*
23 *Paleewong Trading Co., Inc.*, 688 F. Supp. 2d 940, 949 (N.D. Cal. 2010) (Alsup, J.) (noting that,
24 under counterplaintiff's position, if counterdefendant had not terminated contract, then
25 counterplaintiff could wait 50 years before filing suit and would be entitled to fifty years of

1 damages; stating that "[t]his is not the law in California, and not the rule contemplated by *Romano*"
2 as "[i]t would lead to absurd and inequitable results").[7]

3     Accordingly, the Court dismisses the claim for breach of contract as time barred. The
4 dismissal is with prejudice as amendment would be futile. Mr. Reese's counterclaims indicate that
5 the partial breach in February 2008 was followed or accompanied by a repudiation.

6 D.    Tortious Interference

7     Finally, the Gutride Safier parties ask the Court to dismiss Mr. Reese's counterclaim of
8 tortious interference with a business relationship, primarily because he has failed to adequately
9 allege an injury as a result of the purported interference.

10     As a preliminary matter, the Court takes into account the fact that Mr. Reese's claim for
11 tortious interference has been asserted under both California and New York law. *See* FACC at 17.
12 However, no choice of law analysis is necessary (at least at this moment) because, whether
13 California or New York applies, there must be an actual injury resulting from the interference. *See*
14 *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1153 (2003) (construing one of the
15 elements of tortious interference with prospective business advantage under California law as
16 "economic harm to the plaintiff proximately caused by the acts of the defendant"); *Nadel v. Play-By-*
17 *Play Toys & Novelties, Inc.*, 208 F.3d 368, 382 (2d Cir. 2000) (stating that "injury to the business
18 relationship" is required for tortious interference under New York law).

19     Here, Mr. Reese has claimed an actual injury, but the problem is that he has done so in a
20 conclusory fashion only. For example, he alleges in his counterclaims that his ability to represent
21 his father's interests in the *Ticketmaster* litigation has been "severely compromised and negatively
22 impacted due to the fact that Defendants GS LLP, as directed by Defendants Gutride and Safier,
23 filed the above-captioned lawsuit against [him]," FACC ¶ 104, but he does not explain *how*.

---

[7] Had Mr. Reese brought a viable claim of fraud for the 2008 conduct leading to the Withdrawal Agreement, there is little doubt that the cause of action would have accrued and the statute of limitations begin to run at that time.

16

Accordingly, the Court shall dismiss the claim for tortious interference but the dismissal shall be without prejudice – *i.e.*, Mr. Reese has leave to amend to correct the above-identified deficiency.

### III. CONCLUSION

For the foregoing reasons, the Court grants the Gutride Safier parties' motion to dismiss. Both the claims for civil conspiracy and breach of contract are dismissed with prejudice. Mr. Reese has leave to amend his claim for tortious interference only. Any amendment must be filed within twenty (20) days of the date of this order.

This order disposes of Docket No. 28.

IT IS SO ORDERED.

Dated: August 9, 2013

_____
EDWARD M. CHEN
United States District Judge